```
 1                UNITED STATES DISTRICT COURT
 2                SOUTHERN DISTRICT OF CALIFORNIA
 3
 4  In Re:                        ) Case No. 10CV1146-IEG(WMC)
                                  )
 5  THE APPLICATION OF CHEVRON    ) San Diego, California
    CORPORATION.                  )
 6  _____) Monday,
                                    September 13, 2010
 7                                  3:15 p.m.
 8
           TRANSCRIPT OF TELEPHONIC MISCELLANEOUS HEARING
 9          BEFORE THE HONORABLE WILLIAM MCCURINE, JR.
                 UNITED STATES MAGISTRATE JUDGE
10
    APPEARANCES:
11
    For the Plaintiff:           ANDREA E. NEUMAN, ESQ.
12                               JAMES M. SABOVICH, ESQ.
                                 Gibson, Dunn & Crutcher
13                               3161 Michelson Drive
                                 Irvine, California 92612
14                               (949) 451-3939

15  For the Defendant:           MARIA C. SEVERSON, ESQ.
                                 Aguirre, Morris & Severson,
16                                 LLP
                                 444 West C Street, Suite 210
17                               San Diego, California 92101
                                 (619) 876-5364
18
    Transcript Ordered by:       ANDREA E. NEUMAN, ESQ.
19
    Transcriber:                 L. L. Francisco
20                               Echo Reporting, Inc.
                                 6336 Greenwich Drive, Suite B
21                               San Diego, California 92122
                                 (858) 453-7590
22
23
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Echo Reporting, Inc.*

```
                                                               1
 1   SAN DIEGO, CALIFORNIA  MONDAY, SEPTEMBER 13, 2010  2:00 PM
 2                           --oOo--
 3       (Call to order of the Court.)
 4            THE CLERK:  Calling case number 10CV1146, In Re:
 5   Chevron Application.  Counsel, please enter your appearance
 6   for the record.
 7            MS. NEUMAN:  Good afternoon, your Honor, Andrea
 8   Neuman and Jim Sabovich for Chevron Corporation.
 9            MS. SEVERSON:  Good afternoon, your Honor, Maria
10   Severson for Respondents.
11            THE COURT:  Okay, so do you want to have any
12   argument?
13            MS. SEVERSON:  Your Honor, in light of the fact
14   that this docket in order to take one deposition and
15   production of documents is up to number 81, we thought we
16   would just submit our comments and arguments orally today,
17   which I am prepared to do.  Shall I begin, your Honor.
18            THE COURT:  You should begin.
19            MS. SEVERSON:  Thank you.
20            Your Honor, the deposition went forward over
21   objection, but it did go forward, on Friday, September 10th.
22   And the production of documents were remitted on the date
23   that they were in fact requested.  All e-mails that were in
24   the position after a search were submitted originally pre-
25   dating that emergency hearing that then went off calendar.
```

2

1    With regards to the protective order that this
2 Court put in place, the Respondents feel that Chevron came
3 forward requesting relief under 1782 for discovery to be
4 used in a foreign tribunal and to assist the Courts in a
5 foreign tribunal.  This Court has ordered the discovery for
6 that purpose.  There is no reason to lift the protective
7 order and use it in other proceedings.  Chevron can make its
8 case on the merits in other proceedings without
9 bootstrapping what this Court has done.
10    The Second Circuit has considered how discovery
11 orders should be used.  For instance in case number 10-1918,
12 the United States Courts of Appeals for the Second Circuit
13 indicated in its order that "Material produced under this
14 order..." -- and I'm quoting -- "Material produced under
15 this order shall be used by the Petitioners solely for
16 litigation, arbitration or submission to official bodies
17 either local or international."  We argue that the
18 protective order is still prudent in this matter because it
19 involves the work product of a witness who submitted to
20 testimony under oath.  And if the use of those materials are
21 anything other than to fight the foreign tribunal, or to
22 assist the foreign tribunal, then any need for it in the
23 first instance was merely a pretext.
24    Chevron has addressed on its website interest
25 releases that are published is a tax on the Cabrera

3

1  (phonetic) report.  If it seeks to use the Power's
2  (phonetic) deposition in the media to advance its collateral
3  attack on what might be an adverse judgment at some point,
4  we believe that would be an improper use of Mr. Power's
5  testimony under oath that was arguably for use in a foreign
6  tribunal.
7          So we would ask, your Honor, that the protective
8  order be kept in place to keep the sanctity of these
9  proceedings and remembering what they were allegedly for in
10 the first instance.  And that should the Court find that
11 they can be used in any other proceedings in the United
12 States courts, that any transcripts of the testimony be
13 filed under seal.
14         One last thing, your Honor, if I may?
15         THE COURT:  Yes.
16         MS. SEVERSON:  This is also still on appeal.  And
17 the Respondents have not yet made a determination as to how
18 they're going to proceed in light of the fact that the
19 discovery has already gone forward.  But at least as of
20 right now the matter is still going to be considered on
21 appeal.  And, therefore, there's no reason to upset the
22 status quo of the protective order.  Thank you.
23         THE COURT:  Okay.  Ms. Neuman.
24         MS NEUMAN:  Thank you, your Honor.
25         As your Honor is fully aware this protective order

4

1 was entered by the Court without a showing being made by the
2 Respondent solely to address the Respondent's concern that
3 the district court had time to consider their arguments.
4 The district court has done that and issued an order on
5 Friday rejecting their arguments.  So the purpose of the
6 protective order has been fulfilled.
7          In order to get a protective order beyond this
8 temporary one that the Court gave for this very isolated
9 issue, the Respondents would have to make a significant
10 showing under the rules.  And any prohibition opposed by a
11 protective order must further an important or substantial
12 Government interest that is unrelated to the suppression of
13 expression.
14          Mr. Powers would also have to show that the risk
15 of disclosure is real and that if disclosure occurred it
16 would cause an identifiable and significant harm to him.
17          So they have a burden to meet here that they
18 haven't attempted to meet.  So I don't think its protective
19 order could really be considered.
20          On the more practical issues, Chevron sought this
21 discovery for two foreign proceedings not just one.  And
22 under the current protective order we cannot submit the
23 materials in both proceedings we can only submit it in Largo
24 Agrio.
25          Secondarily, as is true in any case, if you cannot

5

1  use the documents produced by one deponent, and that
2  deponent's testimony was the next, you would have a very
3  difficult time putting your case together.  Mr. Powers is an
4  excellent example of that.  He ultimately acknowledged, as
5  we all anticipated, that he drafted the document that served
6  as the source of an annex to the Cabrera report.  He also
7  confirmed that he had drafted answers to questions posed to
8  Mr. Cabrera by the Plaintiffs on his report.  And then
9  acknowledged that the answers that Cabrera filed that were
10 purportedly drafted by him, were what Mr. Powers had
11 provided to Stratus (phonetic).
12          MS. SEVERSON:  Your Honor, I just have to say
13 that's a misstatement of the record.
14          MS. NEUMAN:  Well we'd be happy to file the
15 transcript, your Honor.  It's quite accurate.  On top of
16 which Mr. Powers indicated on multiple occasions during his
17 deposition that he provided his work to Stratus and did not
18 concern himself with what they did with that work after
19 words.  In a couple of weeks we have the depositions of the
20 main Stratus individuals who were involved in drafting the
21 Cabrera report.  And obviously we need to ask them about Mr.
22 Power's documents and his testimony, which tends to be e-
23 mailed between Mr. Powers and these individuals.  And we
24 just can't continue to litigate our case without being able
25 to use the documents produced by each participant in this

6

1 scheme as we depose the next person.
2           MS. SEVERSON:  Your Honor, what we are just
3 looking to avoid is Chevron smearing Mr. Power's name in the
4 press, in his press release, or some other unbridled manner
5 that may be unforseen as we sit here right now.
6           The Second Circuit was wise in its order that any
7 material produced should be used solely for litigation,
8 arbitration, or submission to official bodies either local
9 or international.  And that is an order dated July 15th,
10 2010 of this year.
11          We think that if Chevron takes exception to that
12 sort of limitation, then its purpose in obtaining this is
13 really to litigate this in the press.  And we hope that's
14 not the case, but we want to avoid that.  It is
15 understandable that Chevron would want to use the documents
16 for questioning in other matters.  That's one issue, okay,
17 that's in a private proceeding.  That is not a public
18 filing.  That is in a deposition.  And I don't think
19 anybody's arguing against it.  I'm certainly not, your
20 Honor.  But to actually go ahead and just have unbridled use
21 of the materials so Chevron can make its case to get out of
22 what could be a very hefty judgment against it for Texaco's
23 substandard operations over the years, then I think that
24 would be a misuse and I think that would be Chevron's -- it
25 would be somewhat disingenuous for the state of purpose that

7

1 it originally came forward to this Court.
2         So we would just ask for some reasonable
3 safeguards especially in light of the commentary just
4 provided by counsel.  We believe that if the record were
5 lodged it would show not exactly as depicted and
6 characterized by Ms. Neuman.
7         That said, your Honor, we think that there is
8 happy medium grounds here and that is to limit to litigation
9 and to not have it be a press junket for Chevron.
10        THE COURT:  Any further comment, Ms. Neuman?
11        MS. NEUMAN:  I would just address the Second
12 Circuit, your Honor, included that limitation likely
13 temporarily because it was being asked to consider use of
14 the 600 hours of crude out take and was addressing issues of
15 journalistic privilege.  None of which are presented here.
16 And because it agreed with the expedient circumstances, it
17 issued its order in less than 24 hours after oral argument.
18 And there's no indication that any limitation will be in its
19 final order.  And we are not intending to misuse this
20 information in any way.  But no showing has been made for a
21 protective order.  Any protective order always creates
22 difficulties.  And I'm sure if your Honor has seen the
23 press, you can see that Chevron is under constant attack by
24 the Plaintiffs and does need to appropriately respond.  But
25 the real purpose for this information is to prove that

8

1 Chevron should prevail both in Largo Agrio and in the treaty
2 arbitration.
3          On that, your Honor, we would submit.
4          THE COURT:  Well I appreciate the comments,
5 counsel.  I am guided by Federal Rule of Civil Procedure
6 26(c), the burden for establishing the need for a protective
7 order and the parameters of the protective order is on
8 Movant, and that would be Powers in the Largo Agrio
9 Plaintiffs in this action.  And there has to be good cause
10 shown to issue a protective order.  And one of the goals is
11 to protect a party or person from annoyance, embarrassment,
12 oppression or undue burden, or expense.  Mr. Powers has not
13 made any showing to this Court, at least no satisfactory
14 showing, that he would be subject to any annoyance, and I
15 should say implicit in that is undue annoyance,
16 embarrassment or oppression.  I say implicit in that is
17 because anybody who's deposed -- and I'm speaking now
18 hypothetically -- and in the deposition is shown to have
19 made material misrepresentations, to have that disclosure
20 revealed would be an embarrassment and an annoyance.  And so
21 obviously the statute is not saying that any time a deponent
22 will be embarrassed by having to eat his or her words a
23 protective order should issue.
24          So I don't see any necessary reason to continue
25 any protective order.  There has been no appropriate showing

9

1  under Rule 26(c).
2          Likewise I'm confident you have read Judge
3  Gonzalez' order.  She found that there was no showing by
4  Powers or Plaintiffs that there was any attorney/client
5  privilege that attached to Power's work product any way.
6  And if there had been a privilege that attached to it, it
7  had been effectively waived for the reasons she set forth in
8  her ruling.
9          So there is nothing about his work now that needs
10 to be protected.  Experts who put their name out and their
11 expertise out, always have to be subject to cross
12 examination in litigation and cross examination in public
13 opinion.  They don't get to float their opinions out
14 anonymously and see how things go.  So I don't see from any
15 standpoint of privilege why a protective order is warranted.
16 And I do believe that a protective order would be
17 inconsistent with my ruling and then Judge Gonzalez' ruling
18 on appeal.
19         As to any misuse of Powers' work product, or his
20 deposition testimony, I don't know what that could possibly
21 mean.  And the law does allow other avenues of redress if
22 there's been some illegal or inappropriate use of material.
23 But I have no showing that that has happened, or will
24 happen.  And in any event, if it does happen Mr. Powers has
25 the Courts to answer his concerns for him, or at least

*Echo Reporting, Inc.*

10

1  provide the forum in which he can have his concerns
2  redressed.
3          So I believe the protective order should and must
4  be dissolved.  It is dissolved as of this time.  I'm not
5  going to put any limitations on the protective order and say
6  it's for litigation only.  I don't want to do that.  The
7  product, the deposition, can be used in any legal and
8  appropriate manner.
9          So, is there anything else I need to address on
10 this issue at this time?
11         MR. NEUMAN:  Not from our side, your Honor.
12         MS. SEVERSON:  Your Honor, we will submit on your
13 Honor's ruling.  Respectfully though I must object to the
14 Court's statement that Mr. Powers made material
15 misrepresentations because the transcript is not before you.
16 Whether he did or not is not before you.  And as a practical
17 matter I can assure your Honor that if you did read the
18 transcript you would not come to that finding.  So I
19 respectfully object to the Court's characterization of Mr.
20 Power's deposition testimony as a material
21 misrepresentation.  And with that I thank your Honor and
22 I'll submit.
23         THE COURT:  Well either you misunderstood me or I
24 was totally inept of how I wanted to convey a hypothetical.
25 And I thought --

11

1      MS. SEVERSON:  Thank you.  I appreciate that
2 distinction.
3      THE COURT:  I thought I prefaced my remark with
4 "hypothetically."  I have no idea whether Mr. Powers has
5 made any misrepresentations.  I was speaking in the
6 hypothetical of any deponent.  In fact not specifically Mr.
7 Powers, but any deponent who makes material
8 misrepresentations.  I wasn't suggesting that Mr. Powers did
9 or did not make material misrepresentations.  I've not read
10 the transcript.
11      MS. SEVERSON:  That's distinction, your Honor.
12      THE COURT:  And actually don't want to read it.
13      MS. SEVERSON:  But, your Honor, that's why I
14 spared you filing 82.
15      THE COURT:  Well I appreciate the restraint.
16 Anything else, counsel.
17      MS. SEVERSON:  No, your Honor, thank you very
18 much.
19      MS. NEUMAN:  Thank you, your Honor.
20      THE COURT:  You're welcome.
21   (Proceedings concluded.)
22
23
24
25

```
                                                              12
 1         I certify that the foregoing is a correct
 2  transcript from the electronic sound recording of the
 3  proceedings in the above-entitled matter.
 4  /s/L.L. Francisco                 9/15/10
    Transcriber                       Date
 5
    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
 6
    /s/L.L. Francisco
 7  L. L. Francisco, President
    Echo Reporting, Inc.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```