# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Application of<br><br>CHEVRON CORPORATION, a Delaware corporation,<br><br>          Applicant,<br><br> vs.<br><br>E-TECH INTERNATIONAL, et al.,<br><br>          Respondents. | CASE NO. 10cv1146-IEG (WMc)<br><br>**ORDER DENYING RESPONDENT WILLIAM POWERS' MOTION FOR RECONSIDERATION** |

## I. INTRODUCTION

On March 2, 2011, Respondent filed a motion for reconsideration of a discovery order issued by Magistrate Judge William McCurine, Jr. on February 11, 2011 in the above entitled action. [Doc. No. 110]. After reviewing the order at issue [Doc. No. 107], Respondent's reconsideration motion [Doc. No. 110], Chevron's opposition [Doc. No. 112], and Respondent's reply [Doc. No. 114], the Court **DENIES** Respondent's motion for reconsideration for the reasons stated below.

## II. PREVIOUS RULING

On February 11, 2011, Magistrate Judge William McCurine, Jr. issued an order granting Chevron Corporation's motion to compel discovery of a computer hard drive belonging to William Powers ("Powers"). [Doc. No. 107]. In granting Chevron's motion, the Court was especially persuaded by the following two facts: (1) Powers admitted he deleted many responsive e-mails and

1  documents, and (2) Respondents never refuted Chevron's contention that Powers "threw out" a
2  computer hard drive just *days before* Chevron initiated the instant action and just *days after* a
3  related proceeding was initiated. [Doc. No. 107, p. 2]. With respect to relevance, the Court found
4  the sought-after information went directly to the credibility of Powers, to the credibility of the
5  allegedly neutral expert, Richard Stalin Cabrera, and also to the integrity of Cabrera's report to the
6  Ecuadorian Court. [Doc. No. 107, p. 4]. With respect to any burden this forensic examination
7  would place on Respondent, since Chevron was ordered to pay the cost of the examination, the
8  Court found this discovery would not involve any undue burden or cost to the producers. [Doc.
9  No. 107, p. 4]. Finally, the Court found that because Powers deleted potentially relevant e-mails
10 and other data from his computer, the information sought cannot be obtained "by any means <u>other</u>
11 <u>than</u> a forensic examination of [his] hard drive." [Doc. No. 107, p. 4 (emphasis added)].

   Based on these facts, and bolstered by Federal Rule of Civil Procedure 26(b)(2)(B)[1], which
13 expressly allows for the discovery of electronically stored information, the Court found good cause
14 existed to permit a forensic examination of the hard drive. [Doc. No. 107, pp. 2-3]. In its order
15 granting Chevron's motion to compel this electronic discovery, the Court controlled the scope of
16 this forensic examination by delineating specific instructions regarding (1) the appointment of a
17 neutral forensic expert, (2) limits on said expert, (3) Chevron's responsibility for bearing the costs
18 of the expert, (4) the creation of a search protocol to be limited in time and by search terms, and
19 (5) any necessary future protective orders. [Doc. No. 107, pp. 4-5].

### III.  MOTION FOR RECONSIDERATION

21   On March 2, 2011, Respondent moved the Court to reconsider its February 11, 2011 order
22 permitting discovery of certain e-mails and metadata. [Doc. No. 110]. Chevron Corporation
23 opposed this reconsideration motion on April 15, 2011. [Doc. No. 112]. Respondent replied to
24 Chevron's opposition on April 22, 2011. [Doc. No. 114].

   A.   *Respondent's Motion for Reconsideration*

26   Respondent opens its reconsideration motion by correctly citing the governing legal
27 standard for reconsideration as explained by the Ninth Circuit in *School District No. 1J v. Inc.*,

---

[1] All references will be to the Federal Rules of Civil Procedure unless otherwise noted.

1   F.3d 1255, 1263 (9th Cir. 1993)(hereinafter *AC&S*) . [Doc. No. 110, p. 1.]  However, in his

2   motion, Respondent focuses solely on the "justice" prong of the reconsideration analysis - i.e.

3   proving a court committed "clear error" or the decision was "manifestly unjust."  [Doc. No. 110, p.

4   1].  Respondent appears to have selected "manifest injustice" as his ground for reconsideration

5   relief. [Doc. No. 110, p. 1 (citing Federal Rule of Civil Procedure 60(b)'s articulation of the

6   concept of manifest injustice as including "fraud . . . , misrepresentation, or misconduct by an

7   opposing party")].  To support his contention that the decision was manifestly unjust, Respondent

8   alleges Chevron utilized "unsupported innuendo without citation to evidence" to carry its motion

9   to compel discovery of the hard drive. [Doc. No. 110, p. 1].  Respondent argues that because the

10  Court's February 11 discovery order was based on fraud, misrepresentation, or misconduct by

11  Chevron, the order was manifestly unjust. [Doc No. 110, p. 1].  In his attempt to prove Chevron's

12  fraud, misrepresentation, or misconduct, Respondent points to the following five specific instances

13  of allegedly deceptive activity.

14         First, Respondent takes issue with Chevron's characterization of Powers' discovery

15  production as "woefully inadequate." [Doc. No. 110, p. 2 (citing Chevron's Motion, Doc. No. 93,

16  p. 1)].  Citing Powers' production of a 400 megabyte file and a banker's box filled with pertinent

17  documents, Respondent claims "Chevron provided no evidence to support this statement." [Doc.

18  No. 110, p. 2].

19         Second, Respondent questions Chevron's ability to "know for certain," based on a

20  privilege log submitted in a related proceeding, Powers was in possession of, but did not produce,

21  "dozens of responsive e-mails."  [Doc. No. 110].  Again, Respondent argues Chevron's

22  assumption is unproven and not affirmatively supported by any evidence.  [Doc. No. 110, p. 2].

23         Third, Respondent disagrees with Chevron's contention that Powers did not produce e-

24  mails in their native format, that instead he produced them in a PDF format. [Doc. No. 110, p. 2]

25  Respondent characterizes this assertion as baseless, citing his personal policy of saving important

26  e-mails as PDFs and arguing, then, PDF was the "format native at the time it was requested."

27  [Doc. No. 110, p. 2].

28         Fourth, Respondent takes issue with Chevron implying–through its word choice of "now

claims"–that Powers changed his story mid-stream regarding his policy of deleting e-mails every four to six months. [Doc. No. 110, p. 2]. Respondent claims Chevron cannot cite to any evidence establishing prior inconsistent statements that would call this "deletion policy" into question. [Doc. No. 110, p. 2].

Fifth, Respondent challenges the basis for Chevron's ability to contend he "threw out" a computer and deleted almost all responsive materials. [Doc. No. 110, p. 3]. Respondent argues Chevron provides no support for these untrue statements. Had Chevron inquired further during its deposition of Respondent, Chevron would learned of Respondent's "deletion policy" and would have been able to put Respondent's deletion of e-mails into context. [Doc. No. 110, p. 3].

In sum, Respondent contends Chevron's original motion to compel discovery was not supported by any evidence demonstrating Powers had been uncooperative in his production of sought-after electronic discovery. Rather, Respondent argues Chevron's motion contained "inflammatory statements and characterizations grossly unsupported by evidence," leading to this Court executing a "manifestly unjust" order. [Doc. No. 110, p. 4]. Further, Respondent notes Chevron's recent activity in a related case in the Southern District of New York seeking to stop enforcement of the judgment rendered in Ecuador as a "new fact" demonstrating "the urgency and need for this [reconsideration] proceeding." [Doc. No. 110, p. 4].

B.  *Chevron's Opposition*

In its opposition, Chevron contends Respondent has no grounds to move for reconsideration. [Doc. No. 112, p. 1]. Further, Chevron argues the motion "is a transparent attempt to delay and avoid compliance with the Court's February 11, 2011 Order and to continue obstructing discovery of serious misconduct." [Doc. No. 112, p. 1].

Chevron argues the five specific instances of its alleged misconduct described in Respondent's motion do not present "newly discovered evidence, suggest an intervening change in controlling law, [or] . . . assert that this Court committed any 'clear error.'" [Doc. No. 112, pp. 1-2]. Rather, Chevron contends the "sole basis" for the reconsideration motion is to "correct the record" created by Chevron's use of allegedly inaccurate information and unsupported innuendo. [Doc. No. 112, p. 2 (citing Doc. No. 110, p. 1)]. Chevron opposes Respondent's motion for

reconsideration as being both <u>untimely</u> and <u>false</u>.  [Doc. No. 112, p. 2].

With respect to timeliness, Chevron argues "the time to contest the sufficiency of the evidence presented in Chevron's motion has long since passed, and the Court has ruled."  [Doc. No. 112, p. 2].  Chevron contends in the "nearly eight weeks between [its] reply brief and this Court's ruling, Powers made no attempt to highlight or correct any supposed misstatements in Chevron's filings.  Only now—attempting to justify his motion for reconsideration—does Powers accuse Chevron of 'unsupported innuendo' in its reply brief."  [Doc. No. 112, p. 3].  Because Respondent never addresses Chevron's original reply and because Respondent fails to cite any newly discovered facts or law, Chevron argues Respondent's reconsideration motion is nothing more than a circular continuation of the debate surrounding Chevron's original motion.  [Doc. No. 112, p. 3].  Thus, Chevron describes the reconsideration motion as a regurgitation—"nearly verbatim"—of Respondent's original opposition to Chevron's motion to compel this discovery.  [Doc. No. 112, p. 3].

With respect to the alleged fraud and misrepresentations, Chevron asserts its original discovery motion was supported by "multiple exhibits and declarations to establish the relevant facts—including Powers' own deposition testimony that he had deleted e-mails."  [Doc. No. 112, p. 2 (citing Doc. No. 93-1 at 9-11; Doc. No. 93-3 through 93-12; Doc No. 97; Doc. No. 97-2)].

Looking beyond a strict legal analysis of the propriety of reconsideration motions, Chevron accuses Respondent of employing a "strategy" of obstruction and delay achieved by placing this litigation on a "slow boat to China."  [Doc. No. 112, p. 3].  According to Judge Kaplan of the Southern District of New York, dealing with many of the same parties in a related proceeding, "there is extensive evidence that counsel for the LAPs [Lago Agrio Plaintiffs] and Donzinger made Herculean and perhaps questionable efforts . . . to prevent or delay the disclosure of material proving the roles of Stratus and other U.S. consulates in the Cabrera report."  [Doc. No. 112, p. 3 (citing Decl. of Chevron Attorney James Sabovich, Exh. A at 38)].  As stated by Mr. Sabovich, e-mail correspondence between Plaintiffs' counsel demonstrate a general trial strategy of fabricated delay achieved by "fight[ing] hard on all fronts all the time and conced[ing] nothing, buy[ing] as

1 much time as possible." [Doc. No. 112, p. 3 (citing Sabovich Decl., Exh. B at 137)].[2]

2 With respect to concerns raised by Respondent that this discovery order would jeopardize certain confidential, privileged, and non-relevant information also on the hard drive at issue, Chevron argues this concern is meritless. [Doc. No. 112, p. 4]. While it is true Mr. Powers acts as a consultant for many other companies not involved in this litigation, Chevron points out this Court's February 11 discovery order's appointment of a neutral forensic examiner to act as a filter for relevance protects against this very concern. [Doc. No. 112, p. 4]. Because the order compelling discovery already addressed this concern, Chevron argues Respondent's claim that the Court's order allowed "unrestricted access" to the hard drive was "entirely baseless." [Doc. No. 112, p. 4].

In sum, Chevron contends Respondent's continued "quarrel with statements in Chevron's papers is not grounds for reconsideration." [Doc. No. 112, p. 2]. Rather than present newly discovered evidence or a pertinent change in law, Respondent cites to the same evidence already established in the record, only attempting to rehash it for a second time. [Doc. No. 112, p. 2]. It is Chevron's position that because Respondent already had "ample time to find evidence or present arguments," the time to make such arguments has passed. [Doc. No. 112, p. 2]. Further, Chevron calls into question the "slow boat to China" trial strategy seeming to be employed by Respondent.

C. *Respondent's Reply to Chevron's Opposition*

Respondent, in his reply to Chevron's opposition, reiterates the crux of his argument that this Court's order to compel discovery was manifestly unjust as it was "based on [Chevron's] misrepresentations." [Doc. No. 114, p. 1]. Further, Respondent argues Chevron engaged in a "smear campaign" including "disparaging allegations against Mr. Powers." [Doc. No. 114, p. 1].

Respondent takes issue specifically with Chevron's characterization of the evidence regarding Powers' testimony of "throwing out" his hard drive. Respondent argues there is "no evidence before the Court to demonstrate that Mr. Powers was put on notice that his computer

---

[2] "I think we should appeal on the theory that we gain a greater strategy by fighting [Chevron] on everything, and tying them up, than in conceding any one thing even if we expect to ultimately lose that one thing down the road." [Sabovich Decl., Exh. A at 38, n. 115]. Further, Chevron describes e-mails produced by the other side in response to Court orders that the California case has "been on the slow boat to China" at least in part because their stall tactics. [*Id.*, Exh. C at 137].

1  hard drive was at issue." [Doc. No. 114, p. 1]. Further, Respondent explains the more reasonable,
2  and actual, cause for the replacement of the hard drive was its age - the hard drive was eight years
3  old and was starting to "fail." [Doc No. 114, p. 1] Accordingly, Respondent dismisses Chevron's
4  presentation of the facts as mere "spin." [Doc. No. 114, p. 2].

5  Respondent concludes by arguing that because the order issued was based upon Chevron's
6  "inflammatory rhetoric" and "guile lawyering" it is manifestly unjust. [Doc. No. 114, p. 2].

### IV. LEGAL STANDARD

8  The Court has been presented with a motion to reconsider its February 11, 2011 order
9  compelling discovery of a computer hard drive. [Doc. Nos. 110, 112, 114]. More specifically, this
10 motion seeks reconsideration relief from judgment under Rule 60(b). FED. R. CIV. P. 60(b). [No.
11 110, p. 1]. Rule 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise
12 of excusable neglect; (2) newly discovered evidence; (3) *fraud*; (4) a void judgment; (5) a satisfied
13 or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." *Fuller v.*
14 *M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991) (emphasis added) (citing FED. R. CIV. P.
15 60(b)); *see also Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). The present
16 reconsideration motion stands on only one ground – fraud. [Doc. No. 110, p. 1 (citing FED R. CIV.
17 P. 60(b)(3))]. Under Rule 60(b)(3), "the moving party must establish *by clear and convincing*
18 *evidence* that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the
19 conduct complained of prevented the moving party from fully and fairly presenting the case."
20 *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)(emphasis added.).

21 Outside the confines of Rule 60, parties can seek reconsideration based upon certain case
22 law standards that have been developed over time. As understood by the Ninth Circuit,
23 reconsideration is appropriate in these circumstances only if the district court "(1) is presented
24 with newly discovered evidence, (2) committed clear error or the initial decision was manifestly
25 unjust, or (3) if there is an intervening change in controlling law." *Id.* (citing *All Hawaii Tours,*
26 *Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648 (D. Hawaii 1987), *rev'd on other*
27 *grounds*, 855 F.2d 860 (9th Cir.1988)). With scarce resources, there is an always-pressing need to
28 promote judicial economy and efficiency; therefore, motions for reconsideration should not be

1  granted absent "highly unusual circumstances." *School. Dist. No. 1J v. AC&S, Inc.*, 5 F. 3d 1255,
2  1263 (9th Cir. 1993).

## V. ANALYSIS

A. *The Motion Is Timely.*

The court order which is the subject of Respondent's motion for reconsideration was filed on February 11, 2011. [Doc. No. 107]. Respondent's motion to reconsider was filed on March 2, 2011, less than 28 days after the order issued. Respondent was allowed 28 days within which to file his motion. *See local rule 7.1.i.1.* Therefore, Respondent's motion is timely.

B. *Respondent's Motion Does Not Satisfy the Legal Requirements for Reconsideration.*

Respondent alleges that fraud in Chevron's moving papers induced this Court into issuing a manifestly unjust order compelling discovery. [Doc. No. 110, p. 1]. As stated above, Respondent argues for reconsideration on a theory of fraud and manifest injustice. [Doc. No. 110, p. 1]. In order to be entitled to reconsideration stemming from fraud, Respondent, as the moving party, must affirmatively prove (1) Chevron misrepresented operative facts to the Court, and (2) that these misrepresentations prevented Respondent from fairly presenting its case to the Court.

In his moving papers seeking reconsideration, Respondent tries to shift the argument *from* the correct legal standard for moving the court to reconsider a prior order *to* a critique of the evidence and arguments Chevron used to support its motion to compel production of Powers' computer hard drive. Instead of explaining why he failed to make these same arguments in his opposition to Chevron's motion, he tries, but again fails, to present clear and convincing evidence that Chevron's alleged misconduct "prevented [him] from fully and fairly presenting [his] case" to the Court regarding discovery of the hard drive. In fact, at no point in his papers does Respondent offer proof of the falsity of any facts used by Chevron, and subsequently relied upon by the Court, in the Court's discovery order.

Instead of providing the Court with evidence of any fraud or misrepresentations, Respondent merely gave the Court alternative interpretations of unchallenged facts. All five specific instances of allegedly deceptive conduct by Chevron fall into this "alternative interpretation" category. For example, while Chevron claims Powers threw away his hard drive in

1  anticipation of litigation, Respondent claims Powers replaced his hard drive because it was eight
2  years old and had started to fail.  Both interpretations are plausible and both involve the same
3  operative fact - the hard drive was discarded.  Competing reasons or theories as to *why* the hard
4  drive was thrown away do not rise to the level of fraud.  Simply disagreeing with an adversary's
5  characterization of, or conclusions drawn from, facts established in the record does not constitute
6  fraud.  Rather, fraud is a deliberate act meant to deceive or trick the Court or an adversary. *See*
7  *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) (citing *In re*
8  *Intermagnetics America,* 926 F.2d 912, 916 (9th Cir. 1991).

9  Here, Respondent takes issue with Chevron's *interpretation* of the facts in this case - not
10 with the facts themselves.  As the moving party seeking reconsideration on a fraud theory under
11 Rule 60(b)(3), Respondent carries the affirmative burden of proving fraud has occurred . *See*
12 *Bunch, supra, at 1283 and Cassidy v. Tenorio*, 856 Fd.2 1412, 1415 (9th Cir. 1988). However,
13 Respondent's reconsideration argument is based almost entirely on what Respondent believes
14 Chevron has *not* proven and completely ignores his responsibility to make all his own arguments
15 in a timely and appropriate manner.   If Chevron had committed fraud on the Court in its original
16 motion by bolstering its arguments with facts unsupported by the record, the time to object to
17 those arguments and to the existence of those facts was at the time the motion was heard. If
18 Respondent had made an appropriate objection then, the Court would have considered Chevron's
19 evidence and argument in light of Respondent's countervailing evidence and argument.  It is
20 inappropriate for Respondent to now bring up in a motion for reconsideration facts and arguments
21 that should have, and could have,  been brought up at the time of the original motion.  Indeed, the
22 evidence Respondent now proffers was uniquely in his possession.   *See Local Rule 7.1.i.1.*

23 However, on reconsideration, the burden has shifted to Respondent. *See Local Rule 7.1.i.1.*
24 It is no longer Chevron's duty to affirmatively prove the underlying facts supporting its original
25 motion.  To the contrary, to be entitled to reconsideration relief based on Rule 60(b)(3) fraud,
26 Respondent must affirmatively prove those facts do not exist.  However, in addition to Chevron's
27 original motion being supported by multiple exhibits and declarations, nowhere in his papers does
28 Respondent provide any tangible evidence disproving or refuting the underlying facts Chevron

1  uses in support of its discovery motion. Disagreeing with an adversary's characterization of facts,
2  without disagreeing or disproving the existent of the actual facts themselves, is not enough to carry
3  the day on a claim of fraud. In the adversary system, opposing sides will almost always have
4  conflicting interpretations of the same facts. Losing the battle of persuasion the first time around
5  does not give rise to a second bite at the apple in the form of a Rule 60(b)(3) motion for
6  reconsideration.

7  Further, outside the context of Rule 60, the overwhelming weight of authority holds that
8  the failure to exhaust all pertinent arguments in an original motion or opposition does not turn
9  those late arguments into "newly discovered evidence." *Frederick S. Wyle Professional Corp. v.*
10 *Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir.1985) (evidence available to party before it filed its
11 opposition was not "newly discovered evidence" warranting reconsideration). In fact, parties
12 moving for reconsideration are "*obliged* to show not only that this evidence was newly discovered
13 or unknown to it until after the hearing, but also that it could not with reasonable diligence have
14 discovered and produced such evidence at the hearing." *Engelhard Industries, Inc. v. Research*
15 *Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.1963), *cert. denied*, 377 U.S. 923 (1964) (emphasis
16 added). In Engelhard, the patentee lost a motion for summary judgment brought by the defendant
17 which argued that the patent was invalid and had not been in French. Engelhard resisted the
18 motion with the assistance of two affidavits. However, it lost the motion for summary judgment.
19 Engelhard sought a rehearing which was denied and then appealed to the Ninth Circuit, which
20 rejected the affidavit Engelhard had submitted at the rehearing.[3] In rejecting Engelhard's
21 argument, the Ninth Circuit ruled: "On this appeal Engelhard has repeatedly referred to four other
22 affidavits, asserting that they clearly show the existence of material issues of fact, thus manifesting
23 the error of the trial court in rendering summary judgment. The difficulty with this argument is
24 that these affidavits were not filed at or before the time fixed for the hearing on the motion for
25 summary judgment....They were tendered after that matter had been decided, with Engelhard's
26 petition for rehearing, and were rejected. Since the petition was addressed to the discretion of the

---

28  [3] Only three of the four affidavits submitted at the rehearing were made part of the record on appeal.

1  trial court... Engelhard was obliged to show not only that this evidence was newly discovered or
2  unknown to it until after the hearing, but also that it could not with reasonable diligence have
3  discovered and produced such evidence at the hearing.  But Engelhard made no showing of any
4  kind.  Indeed from our examination of three of the four affidavits... it clearly appears that
5  whatever facts they contain more readily available to and were known by Engelhard well in
6  advance of the hearing." *At 352 [Citations omitted.]*   Similarly, in the instant case, Respondent
7  only offers evidence and argument he could have, and should have, made in his original opposition
8  to Chevron's motion to compel.   Respondent does not bring forward any newly discovered
9  evidence, pertinent change in law, or any other good cause that would justify a motion for
10 reconsideration.  Thus, Respondent has failed to meet his obligation of demonstrating this is one of
11 those "highly unusual circumstances" warranting reconsideration from the Court.  *See Sch. Dist.*
12 *No. 1J v. AC&S, Inc., supra,* 5 F.3d 1255, 1263 (9th Cir. 1993).   In November 2010, Parties met
13 and conferred on this issue for the first time.  Thereafter, Chevron submitted its motion to compel
14 discovery on November 30, 2010 [Doc. No. 93], Respondent submitted a "full-length" opposition
15 on December 13, 2010 [Doc. No. 94], and Chevron replied to the opposition on December 20,
16 2010. [Doc. No. 97].  If Respondent took issue with Chevron's inferences, assumptions, and
17 presentation of the facts, the time to object was either in his "full-length" opposition brief or in the
18 nearly eight weeks between Chevron's reply and the Court's ultimate ruling.  If these facts were as
19 rotten and fraudulent as represented by Respondent, the time to object to them was in December
20 2010.  However, Respondent did not meet his burden then, and he has not meet his burden now.

## VI.  CONCLUSION

22     In his motion for reconsideration, Respondent cites the correct legal standard governing
23 reconsideration motions. While his reconsideration motion is timely under Local Rule 7.2(i)(2), it
24 does not meet any of the other threshold requirements for reconsideration.  This case contains
25 neither fraud, manifest injustice, or any of the other highly unusual circumstances giving rise to
26 legitimate reconsideration claims.  Rather, the crux of Respondent's argument is that Chevron
27 based much of its original argument on facts that were either unsupported by the evidence, subject
28 to different interpretation, or entirely mis-characterized by Chevron.  In doing so, Respondent

1  attempts to shift his burden onto Chevron to prove the validity of his inferences and assumptions
2  regarding the facts of the case were correct. Respondent's attempt to shift the burden is improper.
3  As the moving party seeking reconsideration, the burden rests squarely on Respondent's shoulders.
4  Respondent has failed to carry his burden.

5  Accordingly, for the reasons stated above, Respondent's motion for reconsideration is
6  **DENIED**.

7  Respondent must produce his hard drive immediately on or before May 26, 2011.

8  **IT IS SO ORDERED.**
DATED: May 19, 2011

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court